# In the United States Court of Federal Claims

No. 21-1809C
Filed: February 28, 2023

|  |  |
|---|---|
| FRERES LUMBER CO., INC., | ) |
| *Plaintiff*, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| *Defendant*. | ) |

*Michael E. Haglund*, Haglund Kelley LLP, Portland, OR, for Plaintiff. *Christopher T. Griffith*, of counsel.

*Stephen J. Smith*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *L. Misha Preheim*, Assistant Director, for Defendant.

## OPINION AND ORDER

**MEYERS, Judge**.

This case involves the impact of a forest fire on the parties to a timber sale contract. As is oft repeated, the Court applies contracts pursuant to their clear terms. Here, the Government insists that the contract's plain terms preclude Freres' claims and the Court should dismiss the case. Freres similarly insists that the contract's plain terms require the Court to find that the Government terminated the contract under a provision that requires it to compensate Freres for certain out-of-pocket expenses. The problem is that the contract's plain terms do not support either party; rather, the resolution of this dispute will require factual development regarding the impossibility of complying with certain contractual requirements and the communications between the parties to determine their intent in the aftermath of the forest fire. Because the Court cannot resolve these issues on a RCFC 12(b)(6) motion, the Court denies the Government's motion to dismiss.

### I. Background

On September 27, 2019, the Forest Service awarded Freres Lumber Co. a Timber Sale Contract to log the Hall Fly Timber Sale Area of Willamette National Forest. ECF No. 1 ¶¶ 7-8. Freres began logging operations under the contract in December 2019, which continued without

incident into August 2020.  *Id*. ¶ 7.  In August 2020, a wildfire led the Forest Service to issue an order that suspended Freres' ability to conduct helicopter logging.  *Id*. ¶ 8.  Because of the terrain, Freres typically cut timber and flew it by helicopter to an area that trucks could access so they could pick up and haul the timber to mills for processing.  *See id*. ¶¶ 8-10.  In September, the situation worsened, and the Forest Service amended its fire closure order to prohibit all access to the Willamette National Forest, including the Hall Fly Timber Sale Area.  *Id*. ¶ 8.  The Beachie Creek Fire then significantly damaged the timber sale area timber.  *Id*. ¶ 9.

On November 24, 2020, Freres requested the Forest Service terminate the contract and pay Freres' out of pocket expenses.  ECF No. 16-1.[1]  According to Freres, "[d]ue to catastrophic damage . . . [Freres] requests the Forest Service terminate the contract and reimburse us for out of pocket expenses for felling, bucking, yarding and docking so processed, but not removed from the sale area because the products no longer meet utilization standards because of interruption from fire."  *Id*.  Freres claimed $91,566 in out-of-pocket expenses that it incurred prior to the forest closure.  *Id*.; *see also* ECF No. 1 ¶ 10.  The contracting officer denied Frere's claim, concluding that Freres was not entitled to out-of-pocket expenses because Freres terminated the contract under provision B8.22.  ECF No. 1 ¶¶ 11-12; ECF No. 16-2 at 12 ("I concur that the contract may be terminated for catastrophe by the Purchaser pursuant to B8.221 – Termination by Purchaser."); *see* ECF No. 8-1 at Appx 34 (Timber Sale Contract Subsection B8.22 "Termination for Catastrophe").  Freres disagrees with the contracting officer, reasoning it is entitled to out-of-pocket expenses because the government constructively terminated[2] the contract under provision B8.33.  ECF No. 1 ¶ 12; *see* ECF No. 8-1 at Appx 35 (Timber Sale Contract Subsection B8.33 "Contract Suspension and Modification").

## II.    Legal Standard

"'A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the plaintiff do not entitle him to a legal remedy.'" *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327 (Fed. Cir. 2006) (quoting *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000)).  As the Supreme Court explained, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  And to be "plausible on its face," it "does not need detailed factual allegations." *Twombly*, 550 U.S. at 555; *see also Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (Rule 8 "does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face").  In other words, the complaint must contain enough detail "to raise a right to relief above the

---

[1] The Court may consider documents incorporated into the Complaint without converting the motion into one for summary judgment under RCFC 12(d).  *E.g.*, *Bristol Bay Area Health Corp. v. United States*, 110 Fed. Cl. 251, 262 (2013).  Here, the Parties have gone outside the Complaint to rely upon the contract at issue, Freres' claim, various orders closing the Willamette National Forest, and the contracting officer's decision on Freres' claim.  Neither party seeks to convert this motion to one for summary judgment and the Court does not do so.

[2] Freres' complaint uses the word "suspension," but its supplemental briefing clarifies that Freres alleges the Government "constructively terminated" the contract.  *See* ECF No. 15 at 6.

speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) (citations omitted). Nevertheless, the Court "must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant." *United Pac. Ins. Co.*, 464 F.3d at 1327-28 (Fed Cir. 2006) (quoting *Anaheim Gardens v. United States*, 444 F.3d 1309, 1314-15 (Fed. Cir. 2006)).

### III. Discussion

The difficulty resolving this motion arises from the fact that neither party has followed the terms of the Timber Sale Contract. The contracting officer claims to have terminated the contract under Section 8.22, which does not allow Freres to recover out-of-pocket costs, but that provision requires Freres to elect termination after a rate redetermination that has yet to take place. Freres counters that the Forest Service has constructively terminated the contract under Section B8.33, which does allow Freres to recover out-of-pocket expenses, but that provision does not apply to catastrophic events like the fire here.

#### A. Discovery is necessary to resolve the termination for catastrophic damage dispute.

The Government alleges that, as the contracting officer concluded, Freres terminated the contract under Section B8.22 when it requested contract termination in November 2020. *See* ECF Nos. 16-1 & 16-2. Freres insists that it was not seeking to terminate the contract under the catastrophe provision but a different one that would allow out-of-pocket expenses. As explained in detail below, the Court cannot dismiss under RCFC 12(b)(6) and will require factual development to resolve the competing claims here.

The Court begins with the unambiguous terms of the contract itself. *Hunt Constr. Grp., Inc. v. U.S.*, 281 F.3d 1369, 1372 (Fed. Cir. 2002). Section B8.22 governs contract termination following a catastrophe like the fire at issue here. It provides: "In event of Catastrophic Damage, this contract may be modified under B8.32, following rate redetermination under B3.32, or terminated under this Subsection. Such termination shall not be considered a termination under B8.34." ECF No. 8-1 at Appx 34. It appears clear that the fire here caused catastrophic damage to the timber sale area. Under the contract, a fire causing damage to trees estimated to total half of the estimated timber in the sale area or 200,000 cubic feet of timber. *Id*. at Appx 13 (§ B2.133); *see also* ECF No. 16-1 (Freres relying on "catastrophic damage" to justify contract termination). If the contract stopped there, the Court would agree with the Government that the contract was terminated under Section B8.22.

But Section B8.22 has two subparts, one that allows for Freres to terminate the contract following catastrophic damage and one that allows the Forest Service to do so. And each of these subsections imposes limitations on the right to terminate. The Court cannot, therefore, simply find a termination under B8.22 that does not comply with either Section B8.221 or B8.222. In other words, Section B8.22 provides that any termination for catastrophic damage under B8.221 or B8.222 will not be a termination under B8.34, but B8.22 does not itself allow for contract termination. Finding otherwise would make both B8.221 and B8.222 meaningless surplusage and the Court interprets contracts to give meaning to all its parts. *Gardiner, Kamya*

*& Assocs., P.C. v. Jackson*, 467 F.3d 1348, 1353 (Fed. Cir. 2006) ("[T]he court must interpret [a contract] as a whole and in a manner which gives reasonable meaning to all its parts and avoids conflict or surplusage of its provisions.") (alteration in original) (internal quotations omitted) (citations omitted).

And Section B8.221 imposes certain requirements for a termination under that subsection. Specifically, it provides:

> This contract shall be terminated, upon election and written notice by Purchaser, if Catastrophic Damage rate redetermination under B3.32 shows that the appraised weighted average Indicated Advertised Rate of all Included Timber remaining immediately prior to the catastrophe has been reduced through Catastrophic Damage by an amount equal to or more than the weighted average Current Contract Rate.

ECF No. 8-1 at Appx 34. The rate redetermination under Section B8.32 requires "an appraisal to determine for each species the catastrophe-caused difference between the appraised unit value of Included Timber remaining immediately prior to the catastrophe and the appraised unit value of existing and potential Included Timber immediately after the catastrophe." ECF No. 8-1 at Appx 15.

No appraisal has happened here, meaning there was no rate redetermination. According to the Government, "safety concerns and adverse weather prevented the Forest Service from conducting an appraisal pursuant to B3.32 . . . ." ECF No. 19 at 5. The Government, however, argues that the Forest Service instead completed a Catastrophic Damage rate redetermination "based on the observed condition of the remaining Included Timber on the Sale Area and the burn severity map." ECF No. 16-2 at 10-11. The plain language of Section B3.32, however, does not indicate that the Forest Service may replace an appraisal with "observed condition of the remaining Included Timber on the Sale Area and the burn severity map" if an appraisal is impossible due to active wildfire. *See* ECF No. 8-1 at Appx 15, Appx 34. And reading Freres' request to terminate in the light most favorable to it, it does not appear that Freres was responding to the Government's observed conditions or burn severity map.

Nor could the Forest Service unilaterally terminate the contract under Section B8.222, which allows it to terminate the contract following catastrophic damage. *See* ECF No. 8-1 at Appx 34. Section B8.222 only allows the Forest Service to terminate the contract following catastrophic damage if Freres does not agree to contract modifications proposed to allow harvesting of remaining timber. *Id*. There is no indication that any such modifications have been provided, and the Court cannot say whether any would be feasible. Apparently, the Forest Service does not believe so. Freres contends that there could have been modification that would have allowed it to harvest additional timber. ECF No. 15 at 6. But the contract's plain language does not allow the termination without Freres rejecting proposed modifications.

It may be that the completion of an appraisal or contract modifications to allow harvesting of remaining timber were practically impossible due to the active wildfire. This Court recently recognized that the "resolution of the defense of impossibility requires an examination

4

into the conduct of the party pleading the defense . . . ." *Silver State Land LLC v. United States*, 148 Fed. Cl. 217, 266 (2020). As in that case, "[c]ertain elements of the defense [of impossibility] would benefit from discovery." *Id.* Therefore, the Court will not dismiss this case due to impossibility, although "this decision does not preclude the government from raising this defense at a later stage of the litigation." *Id.*

This need for further discovery is particularly applicable here. While it is true that Freres sought, in writing, to terminate the contract, it did not do so under Section B8.221. Freres specifically sought to have the Forest Service terminate the contract under Section B8.34 and pay Freres its out-of-pocket expenses. ECF No. 16-1. Read in the light most favorable to Freres, the Court cannot determine that Freres intended its November 2020 letter to waive its rights under Section B8.221. The Government also relies upon various telephone communications between Freres and the contracting officer, but the Court cannot rely on one-sided accounts of telephone calls to resolve this dispute. The full context of these communications is necessary to the resolution of this matter, as is the determination of how severe the fire damage is and whether further harvesting of the timber would be feasible. But these are issues for resolution following discovery, not on RCFC 12(b)(6).

### B. Section B8.33 does not on its own support a constructive termination claim.

Concluding that Section B8.22 does not allow the Forest Service to terminate the contract, Freres argues that the Forest Service constructively terminated the contract under Section B8.33, which Freres asserts is the only provision under which the Forest Service could unilaterally terminate the contract. ECF No. 15 at 6-8.[3] Like the Forest Service's arguments about B8.22, the contract precludes Freres' arguments about Section B8.33.

B8.33(a) provides that the "Contracting Officer may, by written order, delay or interrupt authorized operations under this contract or, notwithstanding B8.3, modify this contract, in whole or in part . . . ." ECF No. 8-1 at Appx 35. The only order that Freres alleges to have done anything to prohibit access to the timber sale area, however, is the fire closure order and its amendment. ECF No. 1 ¶ 8. But the contracting officer did not issue those orders—the Forest Supervisor for Willamette National Forest did, and he did so pursuant to safety regulations rather than the contract. ECF No. 16-3. In other words, it does not appear that the contracting officer delayed or interrupted Freres' operations.

And even if the closure order could trigger Section B8.33, it is not clear that Freres could recover the out-of-pocket costs that it seeks. Although Section B8.33(b) does allow Freres to

---

[3] During argument, Freres appeared to turn its argument for constructive termination to Section B8.34, which allows other Forest Service officials to unilaterally terminate the contract for any of the reasons provided in Section B8.33(a). Because Freres did not argue this in its brief, the Government did not have the opportunity to address it prior to oral argument and the Court will not consider Section B8.34 in this opinion. And it is not clear that a termination under B8.34 is truly unilateral because it appears to require the parties to make good faith efforts to identify alternative timber for harvest, which, if they do, would preclude termination. This may or may not be possible given the fire. All that is certain is that the Court will not resolve the Section B8.34 question today.

recover out-of-pocket costs if there were a violation of B8.33(a), it does so "only to the extent that the Contracting Officer's order was the sole and exclusive cause of the delay or interruption of [Freres'] operations." ECF No. 8-1 at Appx 35.  First, as explained above, Freres complains about the Forest Supervisor's order, not the contracting officer's.  Second, the Court cannot say that the Forest Supervisor's order, even if attributed to the contracting officer, was the "sole and exclusive cause of the delay or interruption" here because of the fire.

Therefore, the Court cannot find that Section B8.33 mandates Freres recover its claimed out-of-pocket expenses.

## IV.     Conclusion

In the end, neither party points the Court to a contract provision that supports its contention without further factual development.  Therefore, for the reasons explained above, the Court denies the Government's motion to dismiss, ECF No. 8.

**IT IS SO ORDERED.**

<u>s/Edward H. Meyers</u>
Edward H. Meyers
Judge